IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DESIREE A. WILLIAMS,

Plaintiff,

v. Case No. 5:14-CV-4028-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

Defendant.

## MEMORANDUM AND ORDER

Plaintiff Desiree A. Williams seeks review of the decision of defendant, the Commissioner of Social Security, denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Upon review, the court finds that the Commissioner's decision was not supported by substantial evidence contained in the record. As such, the decision of the Commissioner is reversed and remanded for further consideration consistent with this Memorandum and Order.

## I. Factual and Procedural Background

Plaintiff filed for SSI on January 31, 2011, alleging disability beginning January 1, 2005.[1] Her claim was denied initially on September 6, 2011, and upon reconsideration on January 30, 2012. Plaintiff timely filed a request for an administrative hearing, which took place on October 30, 2012, before Administrative Law Judge ("ALJ") Michael D. Mance. Plaintiff, represented

[1] Plaintiff later amended her alleged onset date to January 31, 2011.

by counsel, appeared and testified. Also testifying was plaintiff's mother, Valerie Walker, and Vocational Expert ("VE") Alissa Smith.

The ALJ issued his decision on December 7, 2012, finding that plaintiff suffered from a variety of severe impairments, including fibromyalgia, obesity, chronic fatigue, anxiety, social phobia, depression in remission, and attention deficit disorder ("ADD"). Despite these findings, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. He concluded that plaintiff retained the residual functional capacity to perform sedentary work with the following additional restrictions and/or limitations: (1) occasionally lift ten pounds; (2) stand and walk for two hours during an eight-hour day; (3) if necessary, alternate between sitting and standing every thirty minutes; (4) occasionally climb ramps and stairs; (5) never climb ladders, ropes, or scaffolds; (6) occasionally stoop, kneel, crouch, and crawl; (7) avoid concentrated exposure to extreme heat and cold, excessive vibrations, hazardous machinery, and unprotected heights; (8) only perform unskilled work that requires no more than occasional contact with coworkers and the public; and (9) only perform low and medium production-rate jobs, avoid high production rate jobs.

The ALJ therefore concluded that plaintiff was not under a disability during the relevant time period. This decision became the final decision of the Commissioner on February 11, 2014, after the Appeals Council denied review. On April 16, 2014, plaintiff filed a Complaint in the United States District Court for the District of Kansas seeking reversal and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration. Given plaintiff's exhaustion of all administrative remedies, her claim is now ripe for review before this court.

In her brief, plaintiff alleges multiple assignments of error relating to the ALJ's assessment of her residual functional capacity. More specifically, plaintiff alleges that the ALJ failed to: (1) properly assess and assign weight to the opinions of plaintiff's treating physicians; and (2) properly assess plaintiff's credibility. As a result of these errors, plaintiff also alleges the VE's findings are unreliable.

## II. Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

An individual is under a disability only if he or she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and

further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *3 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4-5 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at

*5 (citing *Williams*, 844 F.2d at 751). The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084. The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

## III. Analysis

### A. Residual Functional Capacity Generally

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 SSR LEXIS 5, at *19 (July 2, 1996). The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

#### 1. Treating Physician Rule

As a general rule, an ALJ has a duty to evaluate all medical opinions in the claimant's record, to assign weight to each opinion, and to discuss the weight given to the opinion. *See* 20 C.F.R. §§ 416.927(c), 416.927(e)(2)(ii); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th

Cir. 2012). The opinion of a treating physician is generally entitled to controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). In the event that the ALJ decides that "the treating physician's opinion is *not* entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* (emphasis added). Relevant factors the ALJ may consider include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotations omitted).

"Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons for the weight assigned to a treating physician's opinion." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (ellipsis omitted) (internal quotations omitted); *see also* 20 C.F.R. § 416.927(c)(2). The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotations omitted). "If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* (internal quotations omitted). If the ALJ fails to explain how he assessed the weight of a treating physician's opinion, a court cannot presume that he actually applied the correct legal standards. *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (per curiam).

*a. Dr. Vijay Mhatre*

Plaintiff first alleges that the ALJ erred by assigning the opinion of treating physician Dr. Vijay Mhatre only minimal weight. Plaintiff's argument is somewhat misleading, for the ALJ did not assign the *entirety* of Dr. Mhatre's opinion minimal weight, only certain identified portions thereof.

In a Medical Source Statement (Physical) dated April 19, 2010, Dr. Mhatre opined that plaintiff: (1) could occasionally/frequently lift and carry ten pounds; (2) could stand, walk, and sit for less than two hours during an eight-hour day; (3) would have to periodically alternate sitting, standing, and walking; (4) would need the opportunity to shift at will from sitting or standing/walking; (5) would need to sometimes lie down at unpredictable intervals; and (6) would likely miss more than three days of work per month. Dkt. 8-8, at 80-83.[2] The ALJ assigned this portion of Dr. Mhatre's opinion only minimal weight, noting that it was inconsistent with the doctor's own progress notes, which reported only mild clinical signs and findings. The ALJ also noted that Dr. Mhatre's conclusions were inconsistent with plaintiff's statement that she spends one-half of her day sitting at a computer.

Plaintiff alleges several specific errors with regard to the ALJ's treatment of Dr. Mhatre's opinion: (1) the ALJ's reliance upon the lack of objective medical evidence is misplaced since the "symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity," (Dkt. 13, at 27); (2) the ALJ failed to specify exactly which "mild clinical signs and findings" he claims diminish Dr. Mhatre's opinion (Dkt. 13, at 28); and

[2] In this same Medical Source Statement, Dr. Mhatre also opined that plaintiff could never twist, stoop, crouch, or climb ladders and needed to avoid all exposure to extreme temperatures, wetness, humidity, and hazards (i.e., machinery, heights, etc). Dkt. 8-8, at 80-83. However, the ALJ included these limitations in his residual functional capacity assessment. As such, they do not appear to be an issue for plaintiff.

(3) the ALJ failed to recognize that Dr. Mhatre is an expert in the field and treatment of fibromyalgia. Dkt. 13, at 32.

Plaintiff first saw Dr. Mhatre on February 14, 2008, complaining of long-term aches and pains. During the examination, Dr. Mhatre noted plaintiff had "multiple bilateral trigger points and tender points" and a positive ANA. Dkt. 8-8, at 136-37. Plaintiff was diagnosed with, among other things, fibromyalgia syndrome. Dkt. 8-8, at 137. Plaintiff continued to see Dr. Mhatre on a fairly regular basis through July 2012. Although some of Dr. Mhatre's records indicate that plaintiff had periods where she was stable and felt better, and although plaintiff's lab work often came back negative, the majority of Dr. Mhatre's records indicate that plaintiff continued to suffer from severe pain, even having to drop out of school due to "significant forgetfulness, lack of concentration, weakness, [and] fatigue." Dkt. 8-8, at 114. Musculoskeletal exams consistently revealed multiple trigger points and tender points, significant spine spasms, and a diminished range of motion. Dr. Mhatre often reported that plaintiff's fibromyalgia was "inadequately controlled." Dkt. 8-8, at 162, 168.

In December 2011, Dr. Mhatre noted that plaintiff had "severe chronic pain and chronic fatigue syndrome with associated fibromyalgia. The symptoms are getting progressively worse. The current medications are helping but not enough. She also feels depressed. Inadequately controlled." Dkt. 8-8, at 185. Plaintiff's pain became so severe that her mother requested a wheelchair because plaintiff had difficulty walking more than fifty feet. Dkt. 8-8, at 163. However, in July 2012, Dr. Mhatre noted that plaintiff's symptoms had been gradually improving during the previous two months. Dkt. 8-8, at 218.

It is unclear, even after a thorough review of plaintiff's medical records, what the ALJ meant when he stated that "Dr. Mhatre's progress notes show[] only mild clinical signs and

findings." Dkt. 8-8, at 20. What *is* clear, however, is how fibromyalgia cases must be treated. This court has repeatedly stated, and as noted previously in this Memorandum and Order, that "the symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity." *Gregory v. Colvin*, 2013 U.S. Dist. LEXIS 137116, at *10 (D. Kan. Sept. 25, 2013) (citing *Wilson*, 602 F.3d at 1143 (finding that when the record contains diagnoses of chronic pain syndrome or fibromyalgia, complaints of severe pain do not readily lend themselves to analysis by objective medical tests, and are notoriously difficult to diagnose and treat; further noting that no objective medical tests reveal the presence of fibromyalgia). *See also Gilbert v. Astrue*, 231 Fed. Appx. 778, 783-84 (10th Cir. Apr. 11, 2007) (the lack of objective test findings noted by the ALJ is not determinative of the severity of fibromyalgia); *Priest v. Barnhart*, 302 F. Supp. 2d 1205, 1213 (D. Kan. 2004); *Glenn v. Apfel*, 102 F. Supp. 2d 1252, 1258 (D. Kan. 2000).

"Diagnosed by ruling out other diseases, fibromyalgia or its potential for being a disabling condition is not ruled out by the absence of an objective medical test." *Jones v. Colvin*, 2014 U.S. Dist. LEXIS 16519, at *20 (D. Kan. Feb. 11, 2014) (citing *Priest*, 302 F. Supp. 2d at 1213). "Fibromyalgia is diagnosed entirely on the basis of patients' reports and other symptoms. The rule of thumb is that the patient must be positive on at least 11 of the 18 tender points to be diagnosed with fibromyalgia." *Id*. (internal citations omitted). The case law makes clear, as stated above, that "the lack of 'objective' medical evidence is not determinative of the severity of fibromyalgia . . . it is error for the ALJ to discount plaintiff's allegations of limitations due to the fibromyalgia because of the lack of objective medical evidence." *Gregory*, 2013 U.S. Dist. LEXIS 137116, at *11 (internal citations omitted).

Here, the ALJ's cursory treatment of Dr. Mhatre's opinion does not convince or satisfy this court that the ALJ considered all of the relevant factors that must be considered when determining what weight should be accorded the opinions of treatment providers. *See Andersen v. Astrue*, 319 Fed. Appx. 712, 721-23, 727 (10th Cir. Apr. 3, 2009). Aside from plaintiff's self-report in July 2012 that she had been gradually improving, Dr. Mhatre's notes are replete with plaintiffs' significant allegations of pain and medical findings that lend at least some support to those allegations. As noted above, the fact that plaintiff's lab work consistently came back negative is not indicative of the severity of the impairment.

This court could speculate as to the meaning or implication of the ALJ's summary conclusion: perhaps the ALJ was relying on plaintiff's mostly normal lab work. Or perhaps he was referring to Dr. Mhatre's most recent note documenting gradual improvement. However, it is simply not the responsibility or the obligation of the court to do so.

> In the absence of ALJ findings supported by specific weighting of the evidence, the court cannot assess whether relevant evidence supports the ALJ's conclusion that an assessment was or was not consistent with the overall record. Boilerplate, conclusory statements much be linked to evidence in the record. Conclusory statements do not provide justification for rejecting a medical source opinion; the Commissioner must give *specific*, legitimate reasons for rejecting the medical source opinion.

*Cann v. Colvin*, 2013 U.S. Dist. LEXIS 122228, at *24 (D. Kan. Aug. 28, 2013) (internal citations omitted) (emphasis added); *see also Langley*, 373 F.3d at 1119 (the reasons given by the ALJ for assigning certain weight to the opinion of a treating physician must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the *reason* for that weight.") (emphasis added). In its current state, the ALJ's conclusion that the opinion of Dr. Mhatre, plaintiff's treating physician, is entitled only to minimal weight given the lack of objective medical evidence is beyond

meaningful judicial review. Accordingly, this case is reversed and remanded to the Commissioner for further consideration.

The court acknowledges that plaintiff alleges additional assignments of error, but declines to rule on such allegations given the remand.

**IT IS THEREFORE ORDERED** this 14th of July 2015, that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Memorandum and Order.

s/J. Thomas Marten
J. Thomas Marten,
Chief Judge